McBride, judge.
During July 1953 plaintiffs entered into an oral contract with defendant, Warren Palmisano, as general contractor, for the construction of a residence, which now bears the Municipal No. 1465 Robert E. Lee Boulevard in the City of New Orleans, for the price and sum of $19,600. The specifications provided that terrazzo flooring would be installed in the kitchen and breakfast room area, laundry room, and playroom, and metal divider strips were to be used in connection with the laying of the terrazzo. However, the parties subsequently agreed to dispense with the metal divider strips, and the terrazzo was to be laid by a continuous pouring of the terrazzo which is known as the “monolithic” method. We understand terrazzo is a mixture of small marble scraps or particles and cement which is first poured and then trowelled while soft, and when hardened, it is ground to a level and polished by electrically-powered machinery. The proper mixture, we learn, is two parts of the marble scraps or particles to one part of the cement. The general contractor, Palmisano, entered into a subcontract with Geo. L. Ducros Tile Company for the furnishing and installing of the terrazzo floors in the building for the price and sum of $510. The subcontractor, which we shall sometimes hereafter refer to as “Ducros,” submitted a verbal estimate which was accepted by the contractor, who confirmed same by letter.
The building was completed sometime during November 1953 and was accepted by and delivered to plaintiffs, who shortly after moving into the premises noticed tliat the terrazzo floors were defective. Ducros attempted to remedy the defects “in a spirit of cooperation,” but such efforts proved fruitless, and the record shows that the terrazzo is map-cracked and spider-web- *69 cracked to such an extent that it has disintegrated into small pieces, is in a deplorable condition, and must be entirely removed and properly replaced, and the cost for so doing will amount to $1,500. Undisputed expert testimony shows that pieces from the floor will crumble in one’s hand, and the terrazzo is so soft that a nail can be driven through it when as a matter of fact terrazzo, if properly installed, should be durable enough to avoid the nail. Everyone agrees there is no complete, firm or fast bond between the terrazzo and the concrete slab upon which the house was built. The experts say any number of things might have caused the defectiveness of the terrazzo, such as the over-grinding of the surface, the underlying concrete slab could have been so defective that the terrazzo mixture did not settle thereon properly, the mixture could have been stale, and too much coloring might have been placed therein.
The plaintiffs filed this suit against Palmisano, the general contractor, alleging the defectiveness of his job, seeking to recover the sum of $2,500 as the cost for having the defective terrazzo flooring removed and replaced.
The defendant answered averring that the terrazzo was installed by Ducros as subcontractor, and that if the work is defective, then said subcontractor would be liable therefor under its implied warranty of the quality and workmanlike character of the work. Palmisano called the partnership Geo. L. Ducros Tile Company and its component partners in warranty and prayed that if plaintiffs should recover a judgment against him, he in turn should have the same judgment in his favor against Ducros on the latter’s obligation of warranty.
After hearing the case on its merits, the court a qua rendered judgment in favor of plaintiffs and against defendant for the sum of $1,500, and Palmisano was awarded a judgment against Ducros and the partners thereof for a like sum. Ducros appealed to the Supreme Court from that part of the judgment rendered against it on the call in warranty. The Supreme Court transferred the case to this court. 235 La. 202, 103 So.2d 90.
Pending the appeal appellant filed an exception of no cause of action and strenuously contends we should maintain it. The gravamen of the argument in support of the exception is that the floors were constructed through the joint efforts of the general contractor and Ducros, and that the law does not imply, under the subcontract, any warranty by the subcontractor of the terrazzo work in which the general contractor had a part and to which he contributed.
If we are to pass on the issue raised by the exception, it would be necessary to consider the evidence touching the respective parts played by the general contractor and the subcontractor in connection with the construction of the floor, and, of course, we are not empowered to consider the evidence in the case on the exception. Our system of pleading contemplates that certain peremptory exceptions of law tria-ble on the face of the pleadings may be interposed at any stage of the case, but the exception before us is not one of these. As we cannot consider the evidence, there is no basis whatever for maintaining the exception on the face of the pleadings; so, consequently, it is overruled. Folse v. United States Casualty Company, La.App., 87 So.2d 349; Sustendal v. Weber, La.App., 76 So.2d 8.
Ducros had never installed terrazzo by the new monolithic pouring method before, and its employees who worked on the job had never installed terrazzo except by the conventional method. Rickert, who supervised the work, stated that the ingredients for the mixture had been purchased the day before and were fully protected between the time of purchase and the time of use, and according to him a proper mixture had been attained. Ducros’ subcontract work was started July 29, 1953, and the laying of the terrazzo was completed *70 the next day. The floor was trowelled while soft and was allowed to harden until September 12 when the grinding and polishing started. Rickert says the terrazzo was allowed to stand before grinding and polishing longer than is usual, as it should have been rubbed within a period of from five to seven days while the cement was still moist or wet. He attributed the delay to the lack of electric current, which did not become available until September 12, 1953, at which time, by means of a long extension cord, electrical energy was borrowed from the house next door for the purpose of operating the grinding and polishing machinery. There is some dispute whether Ducros could have obtained the necessary electrical current sooner, but this is all beside the point.
Ducros contends that the fact that the floors could not be ground and polished, or rubbed as Rickert referred to the procedure, caused some bad effects to develop. Rickert explained that when terrazzo is allowed “to lay” for an excessive period of time, regrouting of the floor is necessary to fill in the pits “that are going to result.” However, he did not say that the length of time the floor was allowed to remain without rubbing had anything to do with the defects that subsequently developed. He said: “I wouldn’t be sure that’s the reason. I can’t say that.”
The chief contention of Ducros is that it was the bad or improper work performed by the contractor that caused the terrazzo to become defective. It is said that the concrete slab on which the building was erected and onto which the terrazzo was poured was not in proper condition to receive the poured terrazzo mix, and the particular complaint made is that the concrete slab had not been kept wet or in a moistened condition as was necessary.
Under the subcontract, Palmisano, the general contractor, was obligated to treat the slab by wetting it twice daily and keep it wet until the terrazzo was laid, and also to keep the terrazzo wet after being installed twice daily for approximately four days straight so as to prevent rapid drying. The defendant testified he lived up to this obligation on his part; he claims he kept the slab wet before the terrazzo was poured and he also maintains he kept the terrazzo wet after it was installed, all in accordance with his agreement, and there was not one word of countervailing testimony offered.
It has not been pointed out on behalf of Ducros that there were any defects in the concrete slab. When he arrived on the job Rickert found “the slab had been wet down to receive the terrazzo” and Cusi-mano, the mechanic who laid the terrazzo, examined the slab and found it had been raked or roughened as is necessary and there was nothing unusual about it. Cusi-mano swept the slab off to make sure there would be a clean surface so that the “terrazzo could bind.” Cusimano’s job was to install the terrazzo and he had nothing to do with the grinding or polishing.
We are convinced, as must have been the trial judge, that there was nothing out of order with the concrete slab, and this is made the more certain by the fact that Cusimano complimented the general contractor on the condition of the slab and said it was one of the best he had ever worked on and commented how well it had been raked and roughened. But even if the slab was defective or was not in proper condition, Rickert and Cusimano, as experienced terrazzo workers, should have readily noticed this and called the matter to the attention of the general contractor. We believe they would have done so, and their acceptance of the slab as it was demonstrates forceably there was nothing the-matter with it.
The testimony of Charbonnet, Ducros’ expert witness, bears out the fact that the terrazzo is soft and there had been no adhesion between it and the concrete slab, but he attributed the defects in the floor to several factors, namely, the lack of expansion *71 joints which Ducros was not obligated to install, settlement of the concrete slab or the dryness thereof, etc.
The trial judge who saw and heard the witnesses testify and in addition visited the premises in question and made visual inspection thereof resolved all factual questions adversely to Ducros, and points out in his reasons for judgment that the testimony of Palmisano and the experts Maxwell, Scanlan and Ernst points up the softness of the material in the terrazzo floor. In his opinion the testimony of Charbonnet, the expert who appeared for Ducros, was insufficient to overcome the weight and effect of the testimony of the contractor’s witnesses. Under all the circumstances which surround this case, we believe that the factual findings made in the court a qua are entitled to great weight, and we concur in the conclusions.
The fault of Ducros is clearly manifested by the fact there is extreme softness in the terrazzo, and it could hardly be said that this result was not due either to inferior material or workmanship, or both, on the part of Ducros. The record does not establish with any degree of certainty the real or actual cause of the softness and disintegration in the terrazzo, but we believe the contractor has made out a prima facie right to hold Ducros in warranty in view of the proof that the floors were defective and were not what the contract contemplated; we think it devolved upon Ducros, if it would escape liability, to show with some reasonable certainty that the cause of the defects was of such character as to be beyond his control. Rainold v. J. T. Mann & Company, Inc., 9 Orleans App. 266. Ducros has not done so.
LSA-C.C. art. 2769 provides as follows:
“If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his noncompliance with his contract.
Ducros, having totally failed to fulfill its contract and not having shown a legal excuse therefor, is liable for the cost of removing the useless terrazzo as well as the costs of completing the work it should have performed. Ilgenfritz v. Radalec, Inc., 226 La. 59, 74 So.2d 903.
For these reasons, the judgment appealed from is affirmed.
Affirmed.